627 F.2d 177
 Nathan S. JACOBSON; ALW, Inc., a Nevada Corporation; Kings
Castle Limited Partnership, a Nevada Limited
Partnership, Plaintiff-Appellant,
v.
Philip P. HANNIFIN, Individually and as Chairman of the
Nevada Gaming Control Board; Shannon L. Bybee, Jr.,
Individually and as a member of the Nevada Gaming Control
Board; John H. Stratton, Individually and as a member of the
Nevada Gaming Control Board; John W. Diehl, Individually and
as Chairman of the Nevada Gaming Commission; Frank A.
Schreck, Individually and as Commissioner of the Nevada
Gaming Commission; Clair Haycock, Individually and as
Commissioner of the Nevada Gaming Commission; Peter
Echeverria, Individually and as Commissioner of the Nevada
Gaming Commission; and Walter Cox, Individually and as
Commissioner of the Nevada Gaming Commission; and the State
of Nevada, Defendants-Appellees.
 No. 78-1631.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 13, 1980.
Decided Sept. 5, 1980.
 
 Irving M. Gross, Los Angeles, Cal., argued for plaintiff-appellant; Thomas R. Sheridan, Simon & Sheridan, Los Angeles, Cal., on brief.
 Raymond D. Pike, Carson City, Nev., argued for defendants-appellees; A. J. Hicks, Carson City, Nev., on brief.
 Appeal from the United States District Court for the District of Nevada.
 Before HUG and SKOPIL, Circuit Judges, and MUECKE*, Chief District Judge.
 HUG, Circuit Judge:
 
 
 1
 Nathan S. Jacobson and certain business interests (collectively, "Jacobson") brought this action against the State of Nevada and against members of the Nevada Gaming Control Board and the Nevada Gaming Commission (collectively, "the State"). The complaint demands $7,000,000 in damages allegedly caused by the State's conspiratorial deprivation of Jacobson's constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985. Specifically, Jacobson alleges that the Board and the Commission denied his request for licensing as the landlord of a hotel-casino in a manner which violates due process and equal protection. Jacobson appeals from summary judgment for the State. We affirm.
 
 
 2
 * The parties do not dispute the essential historical facts that shape this controversy. At one time, Jacobson was licensed to operate the Kings Castle Hotel and Casino as a gaming establishment. In 1972, however, financial difficulties forced Kings Castle into bankruptcy. Operations ceased, and Jacobson's license expired for nonpayment of the quarterly licensing tax. A reorganization plan that was developed during bankruptcy proceedings provided that Jacobson would not be engaged in the active conduct of the hotel-casino, but would remain only as landlord of the property.
 
 
 3
 Jacobson notified the State of the reorganization plan and formally applied for licensing as landlord. After a hearing, the Gaming Control Board recommended that Jacobson be found suitable as landlord, subject to several conditions to be imposed upon the license. In a hearing before the Gaming Commission, Jacobson objected to the conditions recommended by the Board. Jacobson proposed to the Commission four alternatives, ranging in descending order of preferability from a finding of suitability without conditions to an outright sale of property. The Commission did not expressly rule on the first three of these alternatives. Instead, it adopted Jacobson's fourth proposal, and Kings Castle was sold.
 
 
 4
 Jacobson filed this action in the district court, claiming that the actions of the Board and the Commission denied him due process and equal protection. The district court granted summary judgment for the State on alternative grounds: (1) the defendants acted in good faith and were thus protected by qualified immunity, and (2) Jacobson failed to state a claim for denial of due process or equal protection.
 
 II
 
 5
 Our standard of review on appeal from summary judgment is set forth in Yazzie v. Olney, Levy, Kaplan & Tenner, 593 F.2d 100 (9th Cir. 1979):
 
 
 6
 Under Fed.R.Civ.P. 56(c), summary judgment is proper only where there is no genuine issue of any material fact or where, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. Our role in reviewing the grant of summary judgment is to determine whether there is any genuine issue of material fact underlying the adjudication and, if not, whether the substantive law was correctly applied.
 
 
 7
 Id. at 102 (citations omitted).
 
 
 8
 Jacobson's principal claim is that the State denied him due process in the manner in which it rejected his request for an unqualified license to act as landlord. Because we find that Jacobson has no protectible property interest in a new gaming license, we uphold the district court's conclusion that Jacobson failed to state a claim for denial of due process.
 
 
 9
 There is no dispute that Jacobson's gaming licenses in the Kings Castle Hotel and Casino had expired before he applied to the State for license to act as landlord. We agree with the district court that Jacobson thus "stood in a position no different from that of any other first-time applicant."
 
 
 10
 We must first determine whether Jacobson, in the position of a first-time applicant for a license, had a property interest protected by the due process clause.
 
 
 11
 A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).
 
 
 12
 Russell v. Landrieu, 621 F.2d 1037, at 1040 (9th Cir. 1980).
 
 
 13
 The specific question before us is whether the Nevada Gaming Control Act, Nev. Rev. Stat., ch. 463, provides in Jacobson an expectation of entitlement to a license sufficient to create a property interest. See Griffeth v. Detrich, 603 F.2d 118, 120-21 (9th Cir. 1979), cert. denied, 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980). That will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the Commission to deny licenses to applicants who claim to meet minimum eligibility requirements. See id.; cf. Bowles v. Tennant, 613 F.2d 776 (9th Cir. 1980) (liberty interest in parole).
 
 
 14
 The Nevada gaming statute grants to the Gaming Commission "full and absolute power and authority to deny any application for any cause deemed reasonable by such commission." Nev. Rev. Stat. § 463.220(6); see also Nev. Rev. Stat. §§ 463.130(2), 463.140(2). The only substantive restriction imposed upon the Commission's exercise of authority is the requirement that the basis for its decisions be reasonable. See State v. Rosenthal, 559 P.2d 830, 835 (Nev. 1977). This wide discretion resting with the Gaming Commission negates Jacobson's claim to a protectible property interest created by the State. See United States v. Goldfarb, 464 F.Supp. 565, 572-74 (E.D. Mich. 1979). Cf. Medina v. Rudman, 545 F.2d 244, 250-51 (1st Cir. 1976), cert. denied, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977) (racing license under New Hampshire law). Moreover, Jacobson's interest in a gaming license is not so fundamental as to warrant constitutional protection apart from its status under state law. See id. at 251-52.
 
 
 15
 Jacobson suggests that a protectible interest is created by certain procedural requirements within the Gaming Control Act. He contends that the Commission violated those requirements by failing to rule expressly upon his first three alternative proposals and by failing to issue a written decision supporting its action.[1] Assuming, without deciding, that Jacobson's factual assertions and his interpretation of the procedural requirements of the Act are correct, we find that these requirements do not create a property interest entitled to constitutional protection.
 
 
 16
 Procedural guarantees ordinarily do not transform a unilateral expectation into a constitutionally protected interest. E. g., Hayward v. Henderson, 623 F.2d 596 (9th Cir. 1980); Wells Fargo Armored Service Corp. v. Georgia Public Service Commission, 547 F.2d 938, 942 (5th Cir. 1977); Lake Michigan College Federation of Teachers v. Lake Michigan Community College, 518 F.2d 1091, 1095 (6th Cir. 1975), cert. denied, 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976); see also United States v. Caceres, 440 U.S. 741, 755-57, 99 S.Ct. 1465, 1473-1474, 59 L.Ed.2d 733 (1979). A property interest may be created if "procedural" requirements are intended to operate as a significant substantive restriction on the basis for an agency's actions. See Davis v. Oregon State University, 591 F.2d 493, 497 (9th Cir. 1978); Young v. United States, 498 F.2d 1211, 1220 (5th Cir. 1974). However, that is clearly not the case here. The Gaming Control Act unmistakably commits the substance of decisions regarding licensing applications to the discretion of the Commission. The procedural guarantees claimed by Jacobson do not enhance his expectation of obtaining a license to a degree sufficient to create a protectible interest.
 
 
 17
 Jacobson has also raised claims of conspiracy, facial invalidity of provisions of the Gaming Control Act, and deprivation of his right to equal protection. Those claims are clearly without merit and were correctly dismissed by the district court on summary judgment. Because we affirm the district court's finding that Jacobson failed to state a claim for deprivation of constitutional rights, we need not review the district court's alternative holding based on immunity. See Klopfenstein v. Pargeter, 597 F.2d 150, 151, n.1 (9th Cir. 1979).
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable C. A. Muecke, Chief United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Jacobson cites specifically to Nev. Rev. Stat. § 463.220(6), which provides:
 The commission shall have full and absolute power and authority to deny any application for any cause deemed reasonable by such commission. In the event an application is denied, the commission shall prepare and file its written decision upon which its order denying such application is based.