RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0190P (6th Cir.)
File Name: 04a0190p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SHARON L. GRAGG,
  *Plaintiff-Appellant,*

  *v.*

SOMERSET TECHNICAL
COLLEGE, et al.,
  *Defendants-Appellees.*

No. 02-6387

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 97-00457—Karen K. Caldwell, District Judge.

Argued: March 9, 2004

Decided and Filed: June 22, 2004

Before: MARTIN and CLAY, Circuit Judges; MILLS,
District Judge.[*]

---

[*] The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

_____

## COUNSEL

**ARGUED:** Winter R. Huff, LAW OFFICES OF JOHN G.
PRATHER, Somerset, Kentucky, for Appellant. D. Brent
Irvin, OFFICE OF THE ATTORNEY GENERAL, Frankfort,
Kentucky, for Appellees. **ON BRIEF:** Winter R. Huff,
LAW OFFICES OF JOHN G. PRATHER, Somerset,
Kentucky, for Appellant. D. Brent Irvin, OFFICE OF THE
ATTORNEY GENERAL, Frankfort, Kentucky, for
Appellees.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Sharon L. Gragg
appeals the district court's adverse award of summary
judgment on numerous claims arising from her layoff from
the Kentucky Workforce Development Cabinet. We
AFFIRM.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

Prior to her October 1996 layoff from the Kentucky
Workforce Development Cabinet's Department of Technical
Education at the age of fifty-five, Gragg had worked as a
regional educational consultant assigned specifically to the
Kentucky-Tech Somerset campus. Gragg's duties in that
capacity included performing a comprehensive study of the
Kentucky-Tech Somerset school every five years,
coordinating the school's certified nurse aide program,
scheduling nurse aide classes and administering tests. Dr.
Carol Ann VanHook was Gragg's immediate supervisor; Dr.
Ann W. Cline, the Director of the southern region of the
Kentucky-Tech schools, was VanHook's immediate

supervisor; William Huston was the Commissioner of the Department; and Delmus Murrell was the Deputy Commissioner of the Department, as well as Secretary of the Board for Adult and Technical Education.

In early 1996, the Kentucky General Assembly reduced the Department's authorized full-time workforce, thereby necessitating the elimination of a number of positions. Huston circulated memoranda to certain high-level administrators in April, asking for assistance in determining which positions should be eliminated in order to comply with the legislatively-mandated workforce reduction. According to Huston, this determination was to be made with consideration of the following factors: (1) "Savings by restructuring;" (2) "Program Assessment – Progress made during last 12 months;" (3) "Analyze staffing patterns in Frankfort, Regional Office and School levels;" and (4) "Can necessary functions be combined."

Based in part on Cline's recommendation, Huston determined that Gragg's position, among others, should be abolished. The Department agreed, and terminated the regional educational consultant position that Gragg had held. Gragg's was one of eight positions that were ultimately terminated; four of these positions had been held by women, and four by men. Following her layoff, Gragg applied for other positions within the Department. She was eventually re-hired by the Kentucky-Tech school system and currently works at the "Northpoint (prison) school."

Gragg challenged her layoff by filing in state court an administrative appeal under section 151B.086 of the Kentucky Revised Statutes, which permits an employee, within thirty days of the effective date of her layoff, to appeal the layoff on the ground that applicable statutory procedures were not followed. The trial court found that Gragg's appeal was untimely filed, however, and accordingly dismissed the appeal for lack of jurisdiction. The Kentucky Court of Appeals upheld that dismissal.

Gragg next sought and obtained from the Equal Employment Opportunity Commission a right to sue letter, and she proceeded to file a complaint in federal district court against Somerset Technical College, Cline, VanHook, Huston, Murrell and other defendants. The crux of Gragg's complaint, which asserted numerous federal and state claims, is that her position was chosen for abolition because of her age and gender, and in retaliation for her criticism of the school and the defendants. Gragg's retaliation claims are based upon the following four allegations of speech: (1) Gragg criticized Somerset's accreditation process, including VanHook's conduct in connection with the process; (2) Gragg advised an employee funded under the federal Job Training Partnership Act that she should file a complaint against VanHook for allegedly misusing federal funds by assigning a secretary paid out of those funds to a program not covered by the federal monies; (3) after Gragg's pre-termination hearing, her attorney sent a letter to the Cabinet's general counsel criticizing the process and the criteria used in determining which positions to terminate; and (4) Gragg complained to VanHook that she and other employees should receive overtime pay for their work on a particular project.

On January 29, 2001, the district court granted summary judgment in favor of the defendants on Gragg's federal and state age and gender discrimination claims, federal and state due process claims, state whistleblower claim and constitutional challenge to section 151B.086 of the Kentucky Revised Statutes. The court also awarded summary judgment in favor of the defendants on Gragg's speech retaliation claim concerning her request for overtime pay, holding that Gragg's speech was not constitutionally protected. The defendants' summary judgment motion was denied, however, as to the other three speech retaliation claims, and the defendants filed an interlocutory appeal to this Court challenging that ruling.

On interlocutory appeal, this Court held that the speech alleged in those three claims was not constitutionally protected and, accordingly, ordered that summary judgment be entered for the defendants on those claims. *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 967 (6th Cir. 2002). On remand, the district court entered an order, without opinion, dismissing Gragg's complaint in its entirety. This appeal followed.

## II. *ANALYSIS*

### A. *Speech Retaliation Claims*

We note at the outset that Gragg has devoted considerable argument to challenging this Court's ruling on interlocutory appeal concerning the three speech retaliation claims. That ruling, however, constitutes the law of the case. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (explaining that findings made at one point in a litigation become the law of the case for subsequent stages of the same litigation). Our power "to reach a result inconsistent with a prior decision reached in the same case 'is to be exercised very sparingly, and only under extraordinary conditions.'" *In re Kenneth Allen Knight Trust*, 303 F.3d 671, 677 (6th Cir. 2002) (quoting *Gen. Am. Life Ins. Co. v. Anderson*, 156 F.2d 615, 619 (6th Cir. 1946)). Because this case involves no such "extraordinary conditions," *id.*, we decline to disturb this Court's prior ruling.

We must address, however, the one speech retaliation claim that was not at issue in the interlocutory appeal – i.e., the claim based upon Gragg's alleged request for overtime pay. We hold that this request does not constitute protected speech because it is not a matter of public concern.

[A] particular expression addresses a matter of public concern where it can 'be fairly considered as relating to any matter of political, social, or other concern to the

community....' The inquiry is made based on by 'the content, form, and context of a given statement, as revealed by the whole record.' Speech does not generally touch on a matter of public concern, as that requirement has been interpreted, where its aim is to air or remedy grievances of a purely personal nature.

*Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997) (citations omitted). As the district court recognized, Gragg's motivation in requesting overtime pay was to ensure that she received compensation for additional work; thus, her aim was "to air or remedy grievances of a purely personal nature." *Id.* In our view, the "content, form, and context" of Gragg's statement compel the conclusion that it was not a matter of public concern and, thus, was not constitutionally protected. We therefore hold that the district court properly awarded summary judgment in favor of the defendants on this claim.

### B. *Age and Gender Discrimination Claims*

Gragg next argues that the district court erred in dismissing her age and gender discrimination claims under the Kentucky Civil Rights Act, as well as her identical gender discrimination claim under Title VII. Generally, in order to establish a prima facie case of discrimination under Title VII or the Kentucky Civil Rights Act,[1] a plaintiff must comply with the requirements set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). The analysis differs, however, in cases, such as this one, that involve a "reduction in force." *Barnes v. GenCorp Inc.*, 896 F.2d 1457,

---

[1] The Kentucky Civil Rights Act's discrimination provisions "track[] federal law and should be interpreted consonant with federal interpretation." *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992).

1465 (6th Cir. 1990). A prima facie case of discrimination in a reduction in force case requires proof that the plaintiff was part of a protected class, that she was qualified to perform the job and that she was discharged; in addition, the plaintiff must produce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.* "The guiding principle [in a reduction in force case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age" or gender. *Id.* at 1466. It is undisputed that by virtue of her age and gender, Gragg was a member of a protected class. It is also undisputed that she was qualified to perform her former job of regional educational consultant and that she was discharged. The issue is whether she has shown that the defendants impermissibly singled her out for discharge because of her age or gender.

In an effort to prove that the defendants terminated her because of her age and gender, Gragg argues that younger males received better treatment than she received. Our thorough review of the facts and arguments in this case, however, leads us to the firm conclusion that none of the younger males that Gragg has identified is "similarly-situated in all respects" to her. *Mitchell*, 964 F.2d at 583 (emphasis added). In light of the significant differences that exist between Gragg and each of the identified younger males, Gragg cannot prove age or gender discrimination by comparing her treatment to theirs. Nor has she offered any other direct, circumstantial or statistical evidence indicating that her position was terminated because of her age or gender. Indeed, as the district court noted, the same number of men and women were laid off during the reduction in force.

Moreover, even assuming that Gragg had established a prima facie case of age or gender discrimination, she would be unable to prove that the defendants' reason for abolishing her position was a pretext for discrimination. If a prima facie

case of discrimination is established, "[t]he burden of producing evidence of 'pretext' essentially merges with the burden of persuasion, which always lies with the plaintiff." *Wilkins v. Eaton Corp.*, 790 F.2d 515, 522 (6th Cir. 1986). To meet that burden, Gragg would have to produce evidence that the decisionmakers' explanations were false and that gender or age discrimination was the real reason for the elimination of her position. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08 (1993). In this case, the defendants have offered a legitimate reason for the abolition of Gragg's position. The southern region of the state – in which Gragg was employed – was the only region to have two regional educational consultant positions; the other regions only had one each. Therefore, one of the southern region's regional educational consultant positions had to be abolished in order to achieve a uniform "staffing pattern" throughout the state. Gragg has offered no persuasive evidence indicating that this staffing pattern rationale was a pretext for discrimination.

Gragg argues that the defendants have failed to explain why they eliminated her position and not the other position, which was held by John Spoo. Spoo is not similarly situated to Gragg, however, because he worked for a different supervisor, had more seniority in the position and worked in a more regional (as opposed to school-specific) capacity than Gragg. In any event, the mere fact that the defendants chose Gragg's position over Spoo's, without more, simply does not suggest – let alone prove – any impermissible discrimination.

Therefore, the district court properly granted summary judgment in favor of the defendants on Gragg's age and gender discrimination claims.

### C. *Due Process Claims*

Gragg also contends that the district court erred in dismissing her federal and state due process claims against

defendant Murrell. The essence of these claims is that Murrell's participation in various stages of the layoff process violated Gragg's due process right to an impartial decisionmaker. These claims fail, however, because Gragg has no protectible property interest in her continued employment.

Gragg's argument is based upon the assumption that a property interest is created by virtue of the fact that she was an employee with "continuing status." This assumption is false. Chapter 151B of the Kentucky Revised Statutes sets forth procedures that must be followed in connection with the layoff of an employee with continuing status. Section 151B.085, entitled "Procedures for layoffs," articulates the procedures that must be followed in the event of "[a] layoff of an employee with continuing status in the Department of Technical Education due to the abolition of a position . . . ." Section 151B.086, entitled "Appeal to board of layoff by continuing status employee," provides that:

(1)  A continuing status employee may appeal his layoff on the grounds that the procedures in KRS 151B.085 were not followed.

(2)  An appeal by a continuing status employee shall be filed with the board within thirty (30) days of the effective date of the layoff. . . .

In a case involving a statute similar to the one at issue here, we concluded that the plaintiff employees, who had been laid off, had no protectible property interest in their continued employment. As we explained:

Clearly there is a distinction between a discharge and a layoff. Kentucky's statute provides that a discharge cannot take place absent cause. The Kentucky statute governing layoffs contains no requirement to show cause. It permits layoffs due to . . . abolishment of

positions. It is the cause element which confers upon the property right the imprimatur of constitutionality. Although plaintiffs may have had an expectation of continued employment it was a unilateral one and does not rise to the level of a constitutionally protected right.

*Riggs v. Commonwealth*, 734 F.2d 262, 265 (6th Cir. 1984).

Like the layoff statute in *Riggs*, section 151B.085 contains no "cause" requirement where a continuing employee is laid off because her position is abolished. Gragg clearly had a right to insist that the Department follow the procedures set forth in section 151B.085, *see* KRS 151B.086; *Koo v. Comm., Dep't for Adult and Tech. Educ.*, 919 S.W.2d 531 (Ky. 1995), but she had no protectible property interest in her continued employment. For that reason, the district court properly awarded summary judgment in favor of the defendants on Gragg's due process claims.[2]

### D. *Claim Under the Kentucky Constitution*

Gragg's final claim alleges that the defendants engaged in arbitrary and capricious conduct in violation of section two of the Kentucky Constitution, which provides that "[a]bsolute and arbitrary power over the lives, liberty, and property of freemen exist nowhere in the republic, not even in the largest majority." In light of our conclusion that all other claims in this case were properly dismissed, the district court was entitled, as Gragg acknowledges, to dismiss this state law claim as well.

---

[2]Gragg's lack of a protectible property interest in her continued employment also defeats her claim challenging the constitutionality of section 151B.086 of the Kentucky Revised Statutes, which was based upon the argument that the section unconstitutionally denies substantive due process to employees with a property interest in continued employment.

### III.  *CONCLUSION*

For the foregoing reasons, the district court's judgment is AFFIRMED.