NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 22 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FREDA PHILOMENA D' SOUZA,

  Plaintiff - Appellant,

v.

CITY OF SAN CLEMENTE, a municipal corporation; ADAM ATAMIAN; ANTHONY KURTZ,

  Defendants - Appellees.

No. 24-2423

D.C. No.
8:20-cv-01863-FLA-DFM

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Submitted May 20, 2025[**]
Pasadena, California

Before: GRABER, WARDLAW, and JOHNSTONE, Circuit Judges.

Plaintiff Freda Philomena D'Souza timely appeals from the summary

judgment entered in favor of the City of San Clemente, Adam Atamian, and

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

Anthony Kurtz (collectively, "Defendants") on Plaintiff's claim brought under 42 U.S.C. § 1983.  On de novo review, Barton v. Off. of Navajo, 125 F.4th 978, 982 (9th Cir. 2025), we conclude that the record does not create a genuine dispute of material fact suggesting that Defendants violated Plaintiff's constitutional rights.[1]  We therefore affirm.  See, e.g., King v. County of Los Angeles, 885 F.3d 548, 556 (9th Cir. 2018) ("To establish a claim under § 1983, [the plaintiff] must show the violation of a federal right . . . .").[2]

1.  Relying on two different theories of relief, Plaintiff asserts that the City violated her right to procedural due process.  "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process."  Houston v. Maricopa County, 116 F.4th 935, 945 (9th Cir. 2024) (alteration in original) (quoting Armstrong v. Reynolds, 22 F.4th 1058, 1066 (9th Cir. 2022)).

---

[1] Consequently, the district court properly entered summary judgment on the issue of the City's liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).  See Napouk v. Las Vegas Metro. Police Dep't, 123 F.4th 906, 924 (9th Cir. 2024) ("[B]ecause we have found no constitutional violation, we also affirm the district court's grant of summary judgment on the Monell claims."), reh'g denied, 131 F.4th 1113 (9th Cir. 2025).

[2] The district court also declined to exercise supplemental jurisdiction over Plaintiff's state-law claim, a decision that Plaintiff asks us to reverse only if her "federal claims are reinstated."  Because we affirm the entry of summary judgment as to Plaintiff's § 1983 claim, we do not address her state-law cause of action.

Plaintiff's first theory relates to two aspects of Ordinance No. 1654, which the City enacted in 2018, and the City's enforcement thereof: (1) a provision allowing property owners of nonconforming short-term leasing units ("STLUs") to continue operating during a two-year amortization period; and (2) a provision authorizing an eight-year extension of the amortization period for owners "in good standing."

Regarding the former provision, Plaintiff asserts that the City unconstitutionally "terminat[ed] her two year permitted amortization period." Even if true, Plaintiff continued operating her STLUs throughout the amortization period, and the government did not issue a cease-and-desist notice until July 1, 2020, after the amortization period ended.

Meanwhile, the latter provision states that eight-year extensions will be provided only if "the owner is in good standing," meaning that the owner is "current on remittance of [certain local taxes]." Here, the City's administrative process concluded with a finding that Plaintiff was not in "good standing" when she applied for the extension, a determination that Plaintiff does not challenge in this appeal. The ordinance therefore did not grant Plaintiff a protected property interest relating to the eight-year extension. See Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994) (stating legal standard); Doyle v. City of Medford, 606 F.3d 667, 673 (9th Cir. 2010) ("[A] statute may create a

3                                                      24-2423

property interest if it mandates a benefit when specific non-discretionary factual criteria are <u>met</u>." (emphasis added)).

With respect to her second theory, Plaintiff contends that, under the "appearance of bias" test, the City violated procedural due process when it "unilateral[ly] designat[ed]" a "third party hearing officer regarding [certain] administrative citations." To make out such a claim, a plaintiff "must 'overcome a presumption of honesty and integrity' on the part of decision-makers" by demonstrating that "the adjudicator's pecuniary or personal interest in the outcome of the proceedings . . . create[s] an appearance of partiality." <u>Stivers v. Pierce</u>, 71 F.3d 732, 741 (9th Cir. 1995) (emphasis omitted) (quoting <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975)). Here, nothing in the record suggests that the hearing officer's designation created an unconstitutional appearance of bias.

2. Plaintiff also contends that the City's legislative acts were "arbitrary and irrational in violation of substantive due process." To proceed on that claim, Plaintiff must identify a genuine factual dispute suggesting that the ordinance has "no substantial relation to public health, safety, morals, or general welfare." <u>Samson v. City of Bainbridge Island</u>, 683 F.3d 1051, 1058 (9th Cir. 2012) (quoting <u>Kawaoka v. City of Arroyo Grande</u>, 17 F.3d 1227, 1234 (9th Cir. 1994)). Here, evidence in the record shows that the ordinance was adopted in part to "ameliorate

the negative impacts created by short-term-lodging uses on traditional neighborhood settings," and Plaintiff does not point to any contrary evidence.[3]

3. Next, Plaintiff claims that the City's implementation of the ordinance violated the Takings Clause. "A use restriction that is 'reasonably necessary to the effectuation of a substantial government purpose' is not a taking unless it saps too much of the property's value or frustrates the owner's investment-backed expectations." Sheetz v. County of El Dorado, 601 U.S. 267, 274 (2024) (quoting Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 123, 127 (1978)). Plaintiff produced evidence suggesting that the "STLU permit extension denials" lowered the value of her property by 27.5%, but we have previously deemed much steeper drops in value insufficient to establish a taking. See Colony Cove Props., LLC v. City of Carson, 888 F.3d 445, 451 (9th Cir. 2018) (noting the lack of cases in which "a court has found a taking where diminution in value was less than 50 percent" (quoting CCA Assocs. v. United States, 667 F.3d 1239, 1246 (Fed. Cir. 2011))). And Plaintiff fails to address her investment-backed expectations in any meaningful way. See Maldonado v. Morales, 556 F.3d 1037, 1048 n.4 (9th Cir.

_____

[3] Plaintiff asserts only that the City acted unconstitutionally by "denying an extension request . . . in violation of the automatic [bankruptcy] stay." But Plaintiff does not explain how or why that assertion—which is, if anything, contradicted by evidence in the record—bears on her substantive due process claim.

2009) ("Arguments made in passing and inadequately briefed are waived."). The district court thus properly entered summary judgment on this claim.[4]

4. The record does not contain evidence sufficient to support Plaintiff's claim for retaliation in violation of the First Amendment. Plaintiff undoubtedly engaged in a protected activity when she sought relief in bankruptcy court. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) ("The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances."). Nothing in the record suggests, however, that "the protected activity was a substantial or motivating factor in the [City's] conduct." Bello-Reyes v. Gaynor, 985 F.3d 696, 700 (9th Cir. 2021) (quoting Capp v. County of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019)). In arguing to the contrary, Plaintiff relies principally on Soranno's Gasco. But the details that we deemed "suspicious" in that case, which pertained to "the timing and nature of the [administrative action] and notice," are missing here. Soranno's Gasco, 874 F.2d at 1316.

5. Finally, Plaintiff asserts that the City conducted an unreasonable search in violation of the Fourth Amendment by "continuous[ly] surveill[ing]" her

---

[4] Because we conclude that, as a matter of law, no taking occurred, we need not address Plaintiff's contention that the amortization periods authorized in the ordinance fail to provide "just compensation." See United States v. 300 Units of Rentable Hous., 668 F.3d 1119, 1124 (9th Cir. 2012) (per curiam) ("There was no taking, and therefore no just compensation for an alleged taking was due.").

property.  Plaintiff references the Fourth Amendment's "common law trespassory test" but does not identify any actions that may have constituted a trespass. Evidence in the record shows that, in seeking to determine whether Plaintiff was operating an STLU without a permit, the City searched for advertisements on websites like hotels.com, observed cars with out-of-state license plates parked outside of Plaintiff's property, and spoke with individuals who were on the property's balcony.  So far as we can tell, there is no evidence that the city's investigation involved a city official's stepping onto Plaintiff's property.  Without more, Plaintiff's Fourth Amendment claim cannot defeat the City's motion for summary judgment.  See Florida v. Jardines, 569 U.S. 1, 7 (2013) ("[L]aw enforcement officers need not 'shield their eyes' when passing by the home 'on public thoroughfares . . . .'" (quoting California v. Ciraolo, 476 U.S. 207, 213 (1986))); Kyllo v. United States, 533 U.S. 27, 31–33 (2001) (explaining that "visual[ly] surveill[ing]" a private home from "a public street" with the "naked[]eye" generally does not violate the Fourth Amendment).

**AFFIRMED.**